No. 68403.—Henry A. Wess, Inc. *v.* United States, protests 59/14556 and 60/10721 (Cleveland).

FORD, Judge: A machine and parts covered by the above protests, consolidated for the purpose of trial and described as a vacuum soap dryer, were classified by the collector of customs as articles having as an essential feature an electrical element or device under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and duty was imposed thereon at the rate of 13¾ per centum ad valorem.

It is the contention of plaintiff that the involved merchandise does not have as an essential feature an electrical element or device, within the meaning of said paragraph 353, and is properly subject to classification as a machine under the provisions of paragraph 372 of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and dutiable at the rate of 12 per centum ad valorem or 11½ per centum ad valorem, depending upon the date the shipment was entered for consumption. The pertinent texts of the statutes involved herein are as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra:*

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
    Batteries * * *

\*     \*     \*     \*     \*     \*     \*
    Other * * * _____ 13¾% ad val.

Paragraph 372 of said act, as modified by the sixth protocol, *supra:*

Machines, finished or unfinished, not specially provided for:
    Adding machines * * *

\*     \*     \*     \*     \*     \*     \*
    Other * * * _____ 12% ad val.    11½% ad val.
Parts, * * * _____ The rate for the article of which they are parts.

It is not disputed that the importation involved herein consists of a machine and parts. The only issue before the court is whether the machine is more specifically provided for within the purview of paragraph 353, as modified, *supra.*

The record herein consists of the testimony of one witness who gave the details of the operation of the machine as finally installed. The sum and substance of his testimony was to the effect that the merchandise involved herein was imported without any electrical equipment, with the exception of a "duplex head for small cylinders, complete with cylinder cut-off and electric heating unit with thermostat control," covered by protest 59/14556. The witness testified that this component was actually not used in the machine as presently set up and was, therefore, in his opinion, not essential to the operation. Counsel for plaintiff, accordingly, abandoned its claim as to said article. The record further establishes that the electric motors supply power through V-belts and that a substitution of power other than electricity can be readily accomplished, with

the exception that, possibly, the length of the belts may be required to be changed, as well as the use of different pulley ratios. The witness further indicated that electricity is used because it is cheap and convenient, but that any other source of power could readily be used. The witness further testified that the dryer booster and the plodder booster, which are the chambers between the preliminary plodder and the final plodder, have actually been eliminated in the present installation.

The question as to what constitutes an "essential" electrical feature, within the meaning of the statutory provision at issue, has been the subject of much litigation since the enactment of said paragraph 353. A case which has been frequently cited and quoted on this subject is *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050, wherein the court stated "The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, * * *." However, if the substitution of a nonelectrical feature for the electrical one can be made without modification, wholly or in part, of the article designed to be used therewith, and after the substitution has been effected the article will function normally for the purpose for which it was intended, the electrical feature is nonessential and paragraph 353 would not apply. *Ralph C. Coxhead Corp.* v. *United States*, 22 CCPA 96, T.D. 47080.

A relatively recent decision in the case of *United States* v. *Baker Perkins, Inc., R. F. Downing Co., Inc.*, 46 CCPA 128, C.A.D. 714, appears to be directly in point herein, since, in that case and the case at bar, the electric motors were not imported, and the power was provided by a V-belt drive. The appellate court, in holding the imported merchandise therein to be properly classifiable as a machine, made the following statement:

* * * it is well settled that the classification of an imported article must rest upon its condition as imported, and that condition in this case did not limit the drive to an electric motor. The mere contemplation of the use of electric motive power is not sufficient to constitute the machine an article having as an essential feature an electrical element under paragraph 353.

* * * In this day and age the water wheel and steam engine have passed from the commercial scene insofar as the operation of factory machine tools is concerned. One need not look far to discover that almost every machine in a factory is operated by an electric motor as a practical commercial matter. If this fact is to be taken into consideration in construing paragraph 353 then the humblest wood-turning lathe and every other device having a pulley or sprocket on it for the attachment of a drive belt or a chain is going to become an "article having as an essential feature an electrical element or device" because, practically, it is going to be operated by electrical motive power if it is operated at all.

* * * Any source of adequate power connected to that pulley to rotate the shaft would run the machine. Except for practical and commercial considerations, in the operation of a chocolate factory in a given location, the power source would be immaterial. Selection of an electric motor did not make the grinding mill an essentially electrical article.

Based upon the foregoing, we find and hold the imported merchandise to be a machine and parts, within the meaning of paragraph 372 of the Tariff Act of 1930, as modified, *supra*, and, as such, subject to the rate of 12 per centum ad valorem or 11½ per centum ad valorem, depending upon the date of entry, as claimed by the importer. The claim as to the article covered by protest 59/14556, described as a "duplex head for small cylinders, complete with cylinder cut-off and electric heating unit with thermostat control," having been abandoned, is, accordingly, dismissed. It would also appear from the testimony that the dryer booster and the plodder booster are not essential parts without which the imported machine could not function, since they have been eliminated in the present assembly with no apparent effect on the operation of the machine. Accordingly,

insofar as the dryer booster and plodder booster are concerned, the protest is overruled. In all other respects and as to all other merchandise, the protests are sustained.

Judgment will be rendered accordingly.